**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| DONEIBYS ALCANTARA GUERRERO, <br><br> Petitioner, <br><br> v. <br><br> DAVID WESLING, ANTONE MONIZ, TODD LYONS, and MARKWAYNE MULLIN,[1] <br><br> Respondents. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 1:26-cv-10928-JEK <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM AND ORDER ON
## PETITION FOR A WRIT OF HABEAS CORPUS

**KOBICK, J.**

Petitioner Doneibys Alcantara Guerrero, a citizen of the Dominican Republic, has filed a

petition for a writ of habeas corpus under 28 U.S.C. § 2241 seeking his immediate release or,

alternatively, a bond hearing pursuant to 8 U.S.C. § 1226(a). In December 2022, Alcantara

Guerrero entered the United States and, after a short detention, was released on an interim parole

that expired in February 2023. On January 19, 2026, he was arrested for, and charged with, assault

and battery on a police officer, in violation of M.G.L. c. 265, § 13D, and then detained by U.S.

Immigration and Customs Enforcement ("ICE").

The respondents contend that Alcantara Guerrero is subject to mandatory detention as an

applicant for admission under 8 U.S.C. § 1225(b)(2). They acknowledge, however, that this Court

has repeatedly held in similar cases that 8 U.S.C. § 1226(a)—not Section 1225(b)—governs the

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the current U.S. Secretary of Homeland Security, Markwayne Mullin, is substituted as a defendant in this action.

detention of petitioners like Alcantara Guerrero. Thus, in the alternative, the respondents argue that Alcantara Guerrero is subject to mandatory detention under the Laken Riley Act, 8 U.S.C. § 1226(c)(1)(E), as a noncitizen who is inadmissible and has been charged with, and arrested for, assault on a law enforcement officer. Assuming without deciding that his arrest for assault and battery on a police officer falls within the scope of that statute, requiring mandatory detention based solely on his arrest and charge—without the opportunity for a bond hearing or any initial procedural protections—violates Alcantara Guerrero's Fifth Amendment due process rights. Accordingly, his petition will be granted and the respondents will be ordered to release him in one week unless they provide him with a bond hearing.

## BACKGROUND

### I.  <u>Statutory Framework.</u>

Two statutes principally govern the detention of "noncitizens" or "aliens" pending removal proceedings: 8 U.S.C. §§ 1225 and 1226. Section 1225, which applies to noncitizens "present in the United States who ha[ve] not been admitted," 8 U.S.C. § 1225(a)(1), "authorizes the Government to detain certain aliens seeking admission into the country," *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018). Section 1226, in contrast, "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Id.* (emphasis added). Section 1226(a) establishes a discretionary detention framework for noncitizens arrested and detained "[o]n a warrant issued by the Attorney General." For such individuals, the Attorney General (1) "may continue to detain the arrested alien," (2) "may release the alien on . . . bond of at least $1,500," or (3) "may release the alien on . . . conditional parole." 8 U.S.C. §§ 1226(a)(1)-(2). The arresting immigration officer makes an initial custody determination, but noncitizens have the right to request a custody redetermination or bond hearing before an immigration judge. *See* 8

C.F.R. §§ 1236.1(c)(8), (d)(1). Bond may be denied only if the government "either (1) prove[s] by clear and convincing evidence that [the noncitizen] poses a danger to the community or (2) prove[s] by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021).

Section 1226(c) is the sole exception to Section 1226(a)'s discretionary detention framework. *See* 8 U.S.C. § 1226(a) ("Except as provided in subsection (c) . . . the Attorney General . . . may"); *id.* § 1226(c)(1) ("The Attorney General *shall* take into custody any alien who . . ." (emphasis added)). Until recently, Section 1226(c) required the detention of noncitizens who are inadmissible or deportable because they have committed or been sentenced for certain criminal offenses, or because they are affiliated with terrorist groups or activities. *See id.* §§ 1226(c)(1)(A)-(D). Through the Laken Riley Act, enacted in January 2025, Congress expanded Section 1226(c)'s mandatory detention to a new category of noncitizens who meet two criteria. *See* Pub. L. No. 119-1, § 2, 139 Stat. 3, 3 (2025) (adding 8 U.S.C. § 1226(c)(1)(E)). Under the Act, the Attorney General must also detain a noncitizen if he (i) is inadmissible because he is present in the United States without being admitted or paroled, 8 U.S.C. § 1182(a)(6)(A), obtained documents or admission through misrepresentation or fraud, *id.* § 1182(a)(6)(C), or lacks valid documentation, *id.* § 1182(a)(7); and (ii) "is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements of any burglary, theft, larceny, shoplifting, or assault of a law enforcement officer offense, or any crime that results in death or serious bodily injury to another person," 8 U.S.C. §§ 1226(c)(1)(E).

## II.    **Factual Background.**

On December 4, 2022, Alcantara Guerrero entered the United States from the Dominican Republic without inspection and was detained by U.S. Customs and Border Protection. ECF 1,

3

¶¶ 2, 22; ECF 7-1. He was released on interim parole under 8 U.S.C. § 1182(d)(5)(A) three days later. ECF 1-1; ECF 1, ¶ 3. That same month, ICE initiated removal proceedings against him by issuing a Notice to Appear, which was subsequently filed in Boston Immigration Court. ECF 7-1. His parole expired in February 2023. ECF 1-1; ECF 1, ¶ 3.

Nearly three years later, on January 19, 2026, Alcantara Guerrero was arrested for assault and battery on a police officer, in violation of M.G.L. c. 265, § 13D, and for the common-law offense of interfering with a police officer. ECF 10, at 2-4. Those charges remain pending in Lawrence District Court. *See* ECF 7-2; *Commonwealth v. Alcantara Guerrero*, No. 2618CR000186 (Lawrence Dist. Ct.). That same day, ICE arrested him under a Form I-200 warrant that was "authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act"— *i.e.*, 8 U.S.C. §§ 1226 and 1357. ECF 7-3, at 1; *see* ECF 1, ¶¶ 6, 22. Alcantara Guerrero remains in ICE's custody at Plymouth County Correctional Facility in Massachusetts. ECF 1, ¶¶ 6, 13.

## DISCUSSION

### I.    Section 1226(a) versus Section 1225(b).

The respondents contend that Alcantara Guerrero is lawfully detained as an applicant for admission under 8 U.S.C. § 1225(b)(2), even though he has been in this country for three years and was brought into ICE custody pursuant to a warrant issued by the Attorney General. The respondents acknowledge, however, that "the legal issues presented in this Petition are similar to those addressed by this Court" in *Gomes v. Hyde*, 804 F. Supp. 3d 265 (D. Mass. 2025); *dos Santos v. Noem*, No. 25-cv-12052-JEK, 2025 WL 2370988 (D. Mass. Aug. 14, 2025); *Sampiao v. Hyde*, 799 F. Supp. 3d 14 (D. Mass. 2025); and *Escobar Avelar v. Moniz*, No. 26-cv-10509-JEK, ECF 8 (D. Mass. Feb. 10, 2026). ECF 7, at 3. In those cases, this Court held that the discretionary detention framework of 8 U.S.C. § 1226(a)—not the mandatory detention framework of Section

4

1225(b)—governed the petitioner's detention. *See Gomes*, 804 F. Supp. 3d at 276; *dos Santos*, 2025 WL 2370988, at \*7; *Sampiao*, 799 F. Supp. 3d at 28; ECF 8, *Escobar Avelar*, No. 26-cv-10509-JEK. The respondents contend that "[s]hould the Court follow its reasoning in *Gomes*, *dos Santos*, *Sampiao*, and *Escobar Avelar* it would reach the same conclusion." ECF 7, at 3-4. The Court agrees. For the reasons given in those cases, and absent another statutory basis for detention, Section 1226(a), not Section 1225(b)(2), governs Alcantara Guerrero's detention.

**II.    <u>Section 1226(c)(1)(E).</u>**

The respondents alternatively argue that Alcantara Guerrero is subject to mandatory detention under 8 U.S.C. § 1226(c), as amended by the Laken Riley Act. That statute provides, in pertinent part, that the "Attorney General shall take into custody any alien who . . . (i) is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) of this title; and (ii) is charged with [or] is arrested for . . . any . . . assault of a law enforcement officer offense." 8 U.S.C. § 1226(c)(1)(E). The term "assault of a law enforcement officer" is defined to "have the meanin[g] given . . . in the jurisdiction in which the ac[t] occurred." *Id.* § 1226(c)(2).

The parties dispute whether the crime for which Alcantara Guerrero was arrested and charged—assault and battery upon a police officer, in violation of M.G.L. c. 265, § 13D—constitutes an "assault of a law enforcement officer offense" under the Laken Riley Act. 8 U.S.C. § 1226(c)(1)(E). In Alcantara Guerrero's view, Section 1226(c)(1)(E) does not apply to the Massachusetts offense because, under the categorical approach, the state crime is not an exact term match with the federal statute.[2] *See, e.g.*, *Moncrieffe v. Holder*, 569 U.S. 184, 190-95 (2013) (using

---

[2] At the time of Alcantara Guerrero's arrest, Section 13D criminalized "commit[ting] an assault and battery upon any public employee when such person is engaged in the performance of his duties at the time of such assault and battery." M.G.L. c. 265, § 13D. The Supreme Judicial Court has explained that the statute "encompasses all assault and batteries against 'any public employee,'"

the categorical approach to determine whether a conviction for possession with intent to distribute marijuana under Georgia law constituted an "aggravated felony" under the Immigration and Nationality Act, a determination that affected the noncitizen's eligibility for relief from removal). The respondents disagree that the Court should apply the categorical approach to assess whether the federal statute covers the state offense. They also maintain that an Immigration Judge, not this Court, should determine in the first instance whether the Laken Riley Act applies to the crime for which Alcantara Guerrero was arrested and with which he is charged.

The Court does not need to resolve these disputes because it can assume, favorably to the respondents, that Alcantara Guerrero's arrest and charge for assault and battery on a police officer qualifies as an "assault of a law enforcement officer offense" under the Laken Riley Act. 8 U.S.C. § 1226(c)(1)(E)(ii). Even so, the Court must determine whether, as Alcantara Guerrero argues, mandatory detention pursuant to that statute infringes his procedural due process rights. In his view, Section 1226(c)(1)(E) violates the Due Process Clause of the Fifth Amendment by requiring mandatory detention based solely on his arrest and charge, without affording him a bond hearing or any other initial procedural safeguard. Disputing that due process entitles Alcantara Guerrero to a bond hearing, the respondents point to *Demore v. Kim*, which held that mandatory detention pursuant to Section 1226(c) based on a prior conviction is constitutionally permissible for a limited period of time. *See* 538 U.S. 510, 513, 529 (2003) (under Section 1226(c), "detention ha[s] a definite termination point" and "in the majority of cases it lasts for less than . . . 90 days"). As the respondents see it, this Court should consider only whether Alcantara Guerrero's detention is unreasonably prolonged, and they argue that, at less than three months, it is not.

---

and is not restricted to police officers." *Commonwealth v. Beal*, 474 Mass. 341, 353 (2016), *abrogated on other grounds by Commonwealth v. Guardado*, 493 Mass. 1 (2023).

*Demore* cannot bear the weight the respondents put on it. In *Demore*, the petitioner "conceded that he [was] deportable" and subject to Section 1226(c) because he had been convicted of two crimes—first-degree burglary and petty theft with priors—"following the full procedural protections our criminal justice system offers." *Id.* at 513, 531. Mandatory detention of such convicted noncitizens "necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings" and thus comports with due process, the Supreme Court explained. *Id.* at 528. The Court looked in particular to Congress's findings that allowing discretionary release of noncitizens with criminal convictions "pending their removal hearings would lead to large numbers . . . skipping their hearings and remaining at large in the United States unlawfully." *Id.*

Here, by contrast, Alcantara Guerrero has merely been arrested for, and charged with, assault and battery on a police officer. He has not been convicted of the offense beyond a reasonable doubt, nor has he received "the full procedural protections" of the criminal justice system, including a trial by a jury of his peers. *Id.* at 513; *see also id.* at 525 n.9 (noting that the petitioners were detained after "criminal convictions that were secured following full procedural protections" and that "Congress considered relevant to future dangerousness"). Alcantara Guerrero is not in the same "class of noncitizens who ha[ve] already been convicted (beyond a reasonable doubt) of committing certain serious crimes" for whom the Supreme Court found mandatory detention to be constitutionally permissible. *Hernandez-Lara*, 10 F.4th at 35. And unlike the portion of Section 1226(c) considered in *Demore*, the Laken Riley Act does not contain comparable legislative findings to support the proposition that people arrested for or charged with—though not convicted of—any of the listed offenses pose a heightened danger to the community or a flight risk. *See Doe v. Moniz*, 800 F. Supp. 3d 203, 216-17 (D. Mass. 2025)

(rejecting the government's argument that *Demore* authorizes mandatory detention for mere arrests under the Laken Riley Act and concluding that such detention without a bond hearing violates due process).

*Demore* does not, accordingly, suggest that the government may constitutionally subject Alcantara Guerrero to mandatory detention without any process at all, so long as the detention does not become unreasonably prolonged. Rather, the question whether the Laken Riley Act, as applied, comports with due process must be analyzed by looking to the factors articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976). *See Hernandez-Lara*, 10 F.4th at 27-28 (applying the *Mathews* factors to a due process challenge under Section 1226(a)); *Black v. Almodovar*, 156 F.4th 171, 203, 210 (2d Cir. 2025) (statement in supp. of denial of reh'g en banc) (suggesting that the "new breadth of § 1226(c)," which "was amended to cover . . . those who have no criminal convictions but have been arrested or charged with certain offenses," "may call for new considerations" under "the *Mathews* balancing framework"). Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

The first factor weighs heavily in Alcantara Guerrero's favor. The Due Process Clause of the Fifth Amendment prohibits the government from "depriv[ing]" any "person . . . of . . . liberty . . . without due process of law." "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Because "liberty is the norm, and detention prior to

trial or without trial is the carefully limited exception," *United States v. Salerno*, 481 U.S. 739, 755 (1987), civil "commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection," *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) (quotation marks omitted). For nearly three months, Alcantara Guerrero has been detained at Plymouth County Correctional Facility alongside criminal inmates. ECF 1, ¶ 29. He has been unable to work and is an hour away from his family and home. *Id.* This constitutes "a substantial deprivation of [his] liberty." *Hernandez-Lara*, 10 F.4th at 28.

The second factor strongly supports Alcantara Guerrero as well. The risk of erroneous deprivation is high because he is being detained based solely on an arrest and charge for which he is presumed innocent. *See Doe*, 800 F. Supp. 3d at 216-17 (addressing shoplifting arrest). He has not been afforded the opportunity to contest that charge or offered "the full procedural protections" of the criminal justice system. *Demore*, 538 U.S. at 529; *see Black v. Decker*, 103 F.4th 133, 152 (2d Cir. 2024) ("[T]he almost nonexistent procedural protections in place for section 1226(c) detainees markedly increased the risk of an erroneous deprivation of Petitioners' private liberty interests."). Nor are the respondents required to prove that he poses a flight risk or is a danger to the community to keep him detained. *See Brito v. Garland*, 22 F.4th 240, 246 (1st Cir. 2021). Without any congressional finding that noncitizens like Alcantara Guerrero pose a heightened risk of flight or danger, the respondents are relying solely on the fact that he has been charged with an offense to keep him detained. *See Hernandez-Lara*, 10 F.4th at 36 (distinguishing *Demore* on the ground that "no similar findings regarding dangerousness or flight risk have been made as to the class of noncitizens detained under section 1226(a)").

The third factor, which "ultimately entails an assessment of the 'public interest,'" "is uncertain at best" for the respondents. *Hernandez-Lara*, 10 F.4th at 32-33 (quoting *Mathews*, 424

U.S. at 347). The respondents have an interest, as Alcantara Guerrero acknowledges, in "ensuring that persons subject to possible removal do not commit crimes or evade law enforcement during the pendency of their removal proceedings." ECF 1, ¶ 33. But that interest would be protected by giving Alcantara Guerrero a bond hearing, which would evaluate whether he poses a risk of flight or danger to the community. *Hernandez-Lara*, 10 F.4th at 41. And the respondents do not explain why an "interest in securing appearance at removal proceedings and for deportation holds sway where a noncitizen is *not* a flight risk" or risk of danger. *Id.* at 32 (emphasis added). Further, there are societal benefits to "limiting the use of detention to only those noncitizens who are dangerous or a flight risk": the more nuanced approach "may save the government, and therefore the public, from expending substantial resources on needless detention." *Id.* at 33. And "unnecessary detention imposes substantial societal costs," including decreased tax revenue and economic contributions by detained noncitizens. *Id.* The public interest is not well served where, as here, a noncitizen is detained without a bond hearing—and thus an opportunity for an immigration judge to determine whether he poses a danger to the community or a flight risk—simply because he was arrested for, and charged with, an offense under Section 1226(c). *See Doe*, 800 F. Supp. 3d at 217; *Black*, 103 F.4th at 154 (finding public interest "in minimizing the enormous impact of incarceration in cases where it serves no purpose" because "the noncitizen poses no danger and is not a flight risk" (quotation marks omitted)).

On balance, the *Mathews* factors weigh in favor of Alcantara Guerrero. His significant liberty interest, together with the substantial risk of erroneous deprivation from being detained based solely on an arrest and unproven charge, outweighs any administrative burden associated with providing him a bond hearing. Because Alcantara Guerrero's continued detention violates his procedural due process rights under the Fifth Amendment, he is entitled to a bond hearing pursuant

to 8 U.S.C. § 1226(a). *See Doe,* 800 F. Supp. 3d at 217; *C.R.R. v. Bondi*, No. 26-cv-1282-MJD-DJF, 2026 WL 752462, at *3 (D. Minn. Mar. 17, 2026) (collecting Laken Riley Act cases holding that "a bond hearing was the appropriate remedy for the violation of due process").[3]

## CONCLUSION AND ORDER

For the foregoing reasons, Alcantara Guerrero's petition for a writ of habeas corpus under 28 U.S.C. § 2241, ECF 1, is GRANTED. The respondents are ORDERED to release Alcantara Guerrero from the custody of U.S. Immigration and Customs Enforcement by 5:00 p.m. on April 13, 2026 unless an Immigration Judge determines, at a bond hearing pursuant to 8 U.S.C. § 1226(a), that he poses a flight risk or a danger to the community under the standard set forth in *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). The respondents are further ORDERED to file a status report on or before April 14, 2026, notifying the Court whether Alcantara Guerrero has been granted bond and released or, if his request for bond was denied, providing the reasons for that denial.

SO ORDERED.

/s/ Julia E. Kobick
JULIA E. KOBICK
UNITED STATES DISTRICT JUDGE

Dated: April 6, 2026

---

[3] The respondents' invocation of *Zambrano Urena v. Plymouth Cnty. Corr. Facility* is also misplaced. ECF 16, No. 25-cv-13352-JEK (D. Mass. Dec. 9, 2025). In that case, unlike here, the petitioner did not "contest the government's reliance on Section 1226(c)(1)(E) as a basis for his detention" or "rais[e] any other challenge to the Laken Riley Act." *Id.*